UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PIERRE GUITO,                                       MEMORANDUM
                                                          AND ORDER
                        Plaintiff,             04 CV 3702 (JG)

VIDIJANANO PRASAD and
INDRANIE PRASAD,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

APPEARANCES:

    MICHAEL D'AGOSTINO
        Becker & D'Agostino
        880 Third Avenue
        Suite 1300
        New York, NY 10022
        Attorney for Plaintiff

    MAYU MIYASHITA
        Cheven, Keely & Hatzis
        40 Wall Street
        New York, NY 10005
        Attorney for Defendants

JOHN GLEESON, United States District Judge:

        On July 21, 2002, plaintiff Pierre Guito, a citizen of New Jersey, and defendant Vidijanano Prasad, a citizen of New York, got in a car accident on East 21st Street in Brooklyn, New York. On August 25, 2004, Guito sued Prasad and the car's owner, Indranie Prasad (also a New York citizen) alleging that Prasad's[1] negligence caused him to sustain a serious physical injury. The defendants now move for summary judgment pursuant to Federal Rule of Civil

---

[1] Unless otherwise indicated, "Prasad" is used here to refer to the defendant driver, Vidijanano Prasad.

Procedure 56 on the ground that Guito (a) cannot prove liability and (b) did not suffer a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d). For the reasons set forth below, the motion is denied on the condition that Guito provide, in admissible form and by January 26, 2007, the medical information on which his opposition to the motion is based.

FACTS

The following facts are either undisputed or are set forth in the light most favorable to Guito.

On July 21, 2002, at about 5:00 p.m., Guito was driving his Toyota Camry on East 21st Street when he came to a stop sign at Dorchester Avenue. He stopped, looked both ways, saw no cars, and proceeded into the intersection. His car was then hit in the right rear (passenger side) by the car being driven along Dorchester by Prasad. After the accident, Guito was driven by a friend in Guito's car to the hospital, where Guito complained of pain in his back and hands. He was examined and discharged that evening. Guito does not recall whether he was treated for his pain at that time.

Guito returned to his work in a drug store three days after the accident, and he has worked ever since. He testified at his deposition that his neck and back still hurt a little bit when he sweeps the floor at work. Guito also feels pain on occasion when he drives.

Though Guito's testimony regarding his medical treatment was somewhat unclear, he sought chiropractic treatment in Lawrenceville, New Jersey after the accident in 2002, which continued into 2003. He was also seen by Dr. Peter J. Jaffe, D.O., in Moorestown, New Jersey, at the request of his chiropractor. Jaffe wrote three letters to the chiropractor: an evaluation dated September 23, 2002 and "reevaluations" on October 7 and November 4, 2002. The

2

September 23 and October 7 letters report a 75% range of motion restriction (compared to normal) in the cervical spine and a 70% in the lumbosacral spine. The November 4, 2002 letter reports that each had improved to 80% of normal in all planes. The November 4, 2002 letter contains the following impressions: (1) post traumatic cervical sprain and strain, with muscle spasm; (2) post traumatic thoracic sprain and strain, with muscle spasm; (3) post traumatic lumbosacral sprain and strain, with muscle spasm and (4) bilateral carpal tunnel syndrome, per EMG.

Guito had MRIs of his cervical and lumbar spines at Capital Open MRI and Imaging in Hamilton, New Jersey, shortly after the accident.[2] They reveal bulges at C5-6 and L4-5 and facet hypertrophy at L4-5 and L5-S1.

DISCUSSION

A.   The Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. 56(c). The substantive law governing the case determines the facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not

---

[2]   The vagueness of Guito's medical history is compounded by the fact that the MRI reports are dated August 18, 2003. Without explanation, plaintiff's counsel has supplied them along with the representation that they were taken in 2002, which is consistent with plaintiff's deposition testimony.

return a verdict of the moving party." *Id*. Moreover, "the inferences to be drawn from the underlying facts -- must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts – [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 586-87.

B.  Liability

Defendants contend first that they are entitled to judgment as a matter of law because a rational jury could not find that Prasad was negligent. I disagree. It is undisputed that Prasad had the right of way, and that he collided with Guito in an intersection at which Guito had a stop sign. But Guito testified at his deposition that he had obeyed the stop sign, and that the collision happened because Prasad hit the rear right side of his car after Guito had properly entered the intersection. Viewing the evidence in the light most favorable to Guito and drawing all inference in his favor, a jury could find Prasad at fault despite the fact that Guito had the stop sign.

C.  The "Serious Injury" Requirement

Under New York law, a claimant cannot bring suit for a personal injury arising out of an automobile accident "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). To qualify as a "serious injury," the claimed injury must involve one of the following: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss or use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system;

4

or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. *See* N.Y. Ins. Law § 5102(d). In his papers in opposition to the motion, Guito contended that his injuries were "serious" within the meaning of categories (6) through (9). At oral argument, his reliance on category (6) was withdrawn.

The no-fault law's threshold requirement of "serious injury" was intended "to weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995). The New York Court of Appeals has accordingly "required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." *Toure v. O'Neal*, 98 N.Y.2d 345, 350 (2002) (citations omitted); *see also Licari v. Elliot*, 57 N.Y.2d 230, 236 (1982) (the purpose of the no-fault law is to reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault insurance premium.).

In the summary judgment setting, New York law places on the defendant the initial burden of establishing a prima facie case that a plaintiff has not sustained any "serious injury." *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). If the defendant satisfies this burden the burden then shifts to the plaintiff to come forward with sufficient evidence to permit a jury to conclude that the plaintiff sustained a serious injury within the meaning of the law. *Id*. at 957. As mentioned, subjective complaints alone are insufficient to meet that burden.

Defendants have satisfied their burden of showing a prima facie entitlement to

judgment through their submission of sworn (or affirmed) reports from an orthopedic surgeon (Dr. Carl A. Weiss), a neurologist (Dr. Ravi Tikoo), and a radiologist (Dr. Richard A. Heiden). Weiss and Tikoo examined Guito; Heiden reviewed the MRI's taken two weeks after the accident. Taken together, the physicians' reports establish that Guito had degenerative conditions in his lumbar spine (a bulging disc at L4-5 and facet joint hypertrophy at L4-5 and L5-S1) and cervical spine (protrusion at C4-5 and bulging disc at C5-6) that were not causally related to the accident.

As mentioned, that showing shifts the burden to Guito. His opposition to the motion consists of the following argument: "Plaintiff's medical reports certain (sic) objective findings, by MRI's (sic), of bulging discs in the cervical and lumbosacral spines. Additional (sic) plaintiff continues to have complaints of severe neck and back pain." Plaintiff's Memorandum of Law at 7.

Though the issue is close, when the evidence is viewed in the light most favorable to plaintiff, there appears to be a triable issue of fact with regard to two types of "serious injury": permanent consequential limitation and significant limitation of use of the cervical and lumbosacral spines. The decreased range of motion reports, together with the evidence of disc bulges, warrant that result. *See Stein v. Bentor*, 2005 WL 2244831 (E.D.N.Y. 2005) (Ross, J.) at *9-10.

Notwithstanding the sufficiency of plaintiff's evidence (to that limited extent), its form is defective. Guito relies on medical reports -- the three letters from Peter J. Jaffe, D.O. -- that are "unsworn or unaffirmed." *Felix v. New York City Transit Authority*, 819 N.Y.S.2d 835 (2d Dep't 2006). New York law is clear in requiring plaintiffs in Guito's position to come

6

forward with "competent, admissible medical evidence'" sufficient to raise an issue of fact" on the "serious injury" issue, and that physicians" statements that are neither sworn nor affirmed do not constitute such evidence. *Gilphilin v. Ware*, 613 N.Y.S.2d 594 (1st Dep't 1994). Guito's failure to provide the medical evidence on which he relies in sworn or affirmed statements arguably justifies granting defendants' motion. However, I conclude that a fairer result is an order directing Guito to "submit admissible evidence in opposition to the motion within three (3) weeks of the date of this Order. If [he is] unable to do so, the Court will *sua sponte* reconsider this decision and grant the motion for summary judgment based upon plaintiffs' failure to comply with Fed.R.Civ.P. 56(e)." *Nasrallah v. Helio De*, 1998 WL 152568 (S.D.N.Y. 1998), at *5.

## CONCLUSION

The motion is denied on the condition that Guito submit in admissible form his evidence in opposition to the motion by January 26, 2007. If he is unable to do so, the Court will *sua sponte* reconsider this decision and grant the motion for summary judgment based upon plaintiffs' failure to comply with Fed.R.Civ.P. 56(e).

Jury selection and trial will occur on April 30, 2007. A final pretrial conference will be held on April 20, 2007 at 9:30 a.m.

        So ordered.


        John Gleeson, U.S.D.J.


Dated: January 5, 2007
      Brooklyn, New York